ORIGINAL

FILED
U.S. DISTRICT COURT
AUGUSTA DIV.

2012 MAR -8 P 12: 48

CLERK_____
SO. DIST. OF GA.

IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF GEORGIA

DUBLIN DIVISION

| | | |
|---|---|---|
| HARVEY O. LAYNE, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | CV 311-040 |
| | ) | |
| WALT WELLS, Warden, | ) | |
| | ) | |
| Respondent. | ) | |

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Petitioner, a federal inmate currently incarcerated at McRae Correctional Facility ("MCF") in McRae, Georgia, brought the above-captioned petition under 28 U.S.C. § 2241. As explained below, the Court **REPORTS** and **RECOMMENDS** that the petition be **DISMISSED AS MOOT IN PART** and **DENIED IN PART**. As a result, the Court further **RECOMMENDS** that this civil action be **CLOSED** and that a final judgment be **ENTERED** in favor of Respondent Wells.

### I.   BACKGROUND

On December 5, 2005, the United States District Court for the Middle District of Florida sentenced Petitioner, a citizen of Jamaica, to a 97-month term of imprisonment for conspiring to possess with intent to distribute five kilograms or more of cocaine, in violation of 21 U.S.C. §§ 841(b)(1)(A)(ii) & 846. (Doc. no. 8, Ex. 3, ¶ 5 & Attach. 1.) Prior to being transferred to MCF, Petitioner was incarcerated at FCI-Low Coleman ("Coleman"), a Federal Bureau of Prisons ("BOP") facility located in Coleman, Florida. (Id. ¶ 6 & Attach. 2.)

On February 1, 2006, shortly after his arrival at Coleman, Ms. Teresa Smalls, a teacher in the prison's Education Department, interviewed Petitioner about participation in the Literacy Program. (Id. ¶¶ 1, 7; doc. no. 1, pp. 3-4.) Ms. Smalls attests that, during the meeting, Petitioner expressed that he was not interested in participating in the Literacy Program. (Doc. no. 8, Ex. 3, ¶ 7.) Petitioner's BOP records reflect that he expressed no interest in the Literacy Program and was accordingly categorized as "GED Unsatisfactory." (See id. ¶ 7 & Attach. 3.) Ms. Smalls further attests that during the February 1st meeting, Petitioner signed a "Prison Litigation Reform Act ('PLRA') form," on which Petitioner checked the box indicating that he was a "Sentenced Alien with confirmed orders of deportation, exclusion, or removal" such that nonparticipation in the Literacy Program would not affect his allotment of Good Conduct Time ("GCT"). (See id. ¶ 8 & Attach. 4 (copy of form).) Ms. Smalls also signed the form; however, she states that her "signature does not attest to the accuracy of the inmate's choice of classification. [Rather, she] signs as a witness to the inmate's choice as to how they wish to proceed." (Id.)

According to Petitioner, Ms. Smalls told him during the February 1st meeting that, as a deportable alien, "he was not required to participate in the [Literacy Program]." (Doc. no. 1, p. 4.) Petitioner also reports that Ms. Smalls told him there was a waiting list for the Literacy Program and that she would place his name on the waiting list in case he decided to participate. (Id.) While Petitioner confirms that he signed the PLRA form, he insists that the form was given to him with the box already checked. (Doc. no. 9, p. 2.)

Responding to the allegations in the instant § 2241 petition, Ms. Smalls indicates that she does not specifically recall the details of her interaction with Petitioner during the

2

February 1st meeting, but she avers that she does not make determinations regarding issues such as the effect of inmates' immigration status on their GCT entitlement; rather, she states that she always explains to inmates that they must "contact the Records Office or their Unit Team for the specifics concerning their cases," such as "whether or not [they are] in fact the subject of a final deportation order." (Doc. no. 8, Ex. 3, ¶ 8.) Respondent additionally points out that, contrary to Petitioner's allegations, there is no indication in Petitioner's records that he was placed on a waiting list. Ms. Smalls further states that if Petitioner had been placed on a waiting list, he would have had to wait a maximum of a few weeks before being placed in the Literacy Program.[1] (Id. ¶ 9.)

On February 2, 2006, Petitioner participated in Coleman's Institution Admission and Orientation Program, during which staff members from various departments within the prison provide information related to the prison's policies and procedures. (Id. ¶ 10.) Ms. Smalls taught the portion of the class related to the Literacy Program, which she attests included providing Petitioner and the other inmates with information regarding the effect their participation of lack thereof would have on their entitlement to GCT in light of their particular situations. (Id. ¶ 10 & Attach. 5.)

On December 8, 2006, Ms. Smalls met with Petitioner again about participation in the Literacy Program. Ms. Smalls reports that Petitioner again expressed no interest in participating in the Literacy Program. Petitioner's records reflect his decision and show that his "GED Unsatisfactory" status remained unchanged at that time. (Id. ¶ 11.)

---

[1] It is undisputed that Petitioner did not participate in the Literacy Program during the approximately one and a half years he spent at Coleman.

3

Petitioner reports that "[n]one of [his] GCT . . . [was] withheld while he was at Coleman." (Doc. no. 1, p. 4.) Petitioner has provided prison records from the time he was confined at Coleman that set forth a projected release date of May 25, 2012 – a projected date that appears to be based on an award of the maximum allotment of GCT. (See doc. no. 1-1, p. 30.)

In addition, Petitioner states that during a "program review" meeting held on March 3, 2007, he "was given until August of 2007 to enroll in the [Literacy Program]." (Doc. no. 1, p. 4; doc. no. 1-1, p. 31.) Respondent disputes this assertion, noting that the documentation of the March 3rd meeting shows that Petitioner had not enrolled in the Literacy Program and that Literacy Program participation by August of 2007 was a goal set for Petitioner to reach by the next program review meeting, not a "free pass" to decline Literacy Program participation while still earning the maximum allotment of GCT. (Doc. no. 8, p. 9 (discussing doc. no. 1-1, p. 31).)

Petitioner was transferred to MCF on August 2, 2007. (Doc. no. 8, Ex. 3, ¶ 12 & Attach. 2.) Petitioner states that about two weeks later, officials at MCF informed him that he was required to participate in the Literacy Program. (Doc. no. 1, p. 4.) On or around August 21, 2007, Petitioner began to participate in the Literacy Program; some time in early 2008, he surpassed the mark of 240 credit hours in the Literacy Program, upon which his "GED status" was changed to "Satisfactory." (Doc. no. 8, Ex. 3, ¶ 14 & Attach. 6.) Petitioner asserts that some time during the initial period of his confinement at MCF, prison officials provided a new computation of his sentence in which he was allotted 42 days of GCT per year rather than the maximum of 54 days per year for the first three one-year

periods of his confinement (the periods ending in May of 2006, May of 2007, and May of 2008). (Doc. no. 1, p. 4.) Of note, Petitioner does not allege – and there is no evidence to suggest – that he is subject to a final order of deportation, exclusion, or removal.

In the instant § 2241 petition, Petitioner argues that prison officials at MCF wrongfully deprived him of 36 days of GCT because of his initial nonparticipation in the Literacy Program. (See id. at 4.) Petitioner contends that he is entitled to the full allotment of GCT because, as a sentenced deportable alien, he is not required to participate in the Literacy Program. (Id. at 8-9.) Moreover, Petitioner argues that, at the very least, he is entitled to the full allotment of GCT for the period ending in May of 2008, as he completed the mandatory credit hours in the Literacy Program during that period. (Id. at 9-10.) Petitioner also argues that Respondent is estopped from withholding any GCT based on Literacy Program nonparticipation because he was on the waiting list at Coleman and because he enrolled in the program by the time provided in his March 3, 2007 program review meeting. (Id. at 10-11.)

In his response, Respondent shows that following the filing of the instant petition, Petitioner's sentence computation was updated to award him the full allotment of GCT for the year-long period ending in May of 2008. (Doc. no. 8, pp. 8-10 & Ex. 3, ¶ 15.) However, Respondent contends that because of Petitioner's initial nonparticipation in the Literacy Program, he is not entitled to the full allotment of GCT for the remaining time periods at issue (*i.e.*, the periods ending in May of 2006 and May of 2007). (See id. at 8, 10-13.) Petitioner filed a reply in which he continues to argue that he should be granted the full amount of GCT for the these periods and emphasizes that while he was confined at Coleman,

5

prison officials did not withhold GCT. (Doc. no. 9.)

## II. DISCUSSION

The primary issue in this case is whether Petitioner is entitled to additional GCT under the applicable regulations. For the reasons set forth below, the Court concludes that he is not.

Before addressing Petitioner's specific contentions, the Court will first examine the GCT statute and the BOP's relevant regulations and policies.

### A. Applicable Statutes and Regulations

When Congress enacted the PLRA, it amended the provision governing GCT to provide that prisoners

> may receive credit toward the service of the prisoner's sentence, beyond the time served, of up to 54 days at the end of each year of the prisoner's term of imprisonment, beginning at the end of the first year of the term, subject to determination by the [BOP] that, during that year, the prisoner has displayed exemplary compliance with institutional disciplinary regulations. . . . . [I]f the [BOP] determines that, during that year, the prisoner has not satisfactorily complied with such institutional regulations, the prisoner shall receive no such credit toward service of the prisoner's sentence or shall receive such lesser credit as the [BOP] determines to be appropriate.

18 U.S.C. § 3624(b)(1). In determining whether and how much GCT should be awarded to a prisoner, Congress also directed, "In awarding credit under this section, the [BOP] *shall* consider whether the prisoner, during the relevant period, has earned, or is making satisfactory progress toward earning a high school diploma or an equivalent degree." Id. In keeping with this dictate, Congress has mandated that the BOP must provide a "General Educational Development ["GED"] program for inmates who have not earned a high school diploma or its equivalent." Id. § 3624(b)(3). However, Congress has also provided,

6

"Exemptions to the [GED] *requirement* may be made as deemed appropriate by the Director of the [BOP]." Id. § 3624(b)(4) (emphasis added).

The BOP has promulgated regulations that govern GCT in accordance with the congressional mandates set forth in § 3624(b). Under these regulations, an inmate who has earned or is making satisfactory progress toward a GED credential or high school diploma is eligible for up to 54 days of GCT for each year served. 28 C.F.R. § 523.20(c)(1). An inmate who does not meet these criteria, on the other hand, is only eligible for a maximum of 42 days of GCT for each year served. Id. § 523.20(c)(2). These regulations further provide that "an alien who is subject to a final order of removal, deportation, or exclusion is eligible for, but is not required to, participate in a literacy program, or to be making satisfactory progress toward earning a [GED] credential, to be eligible for a yearly award of good conduct time." Id. § 523.20(d).

The BOP has also promulgated regulations governing an "adult literacy program." 28 C.F.R. § 544.70 *et seq*. With certain exceptions, inmates who do not have a GED or a high school diploma are required to participate in such a program for a minimum of 240 hours or until they obtain a GED, whichever occurs first. Id. § 544.70. One of the enumerated exceptions to this requirement is that "sentenced deportable aliens," among others, "are not required to attend the literacy program." Id. § 544.71(a)(3). Sentenced deportable aliens who do not attend a literacy program cannot be subjected to disciplinary action for opting out of the program. See id. §§ 544.71(a) & 544.75.

In addition, the BOP has fleshed out this regulatory framework with Program

Statements ("PS") that apply to GCT awards and Literacy Program participation.[2] PS 5884.03 details the procedures for awarding GCT under 18 U.S.C. § 3624 and 28 C.F.R. § 523.20, and provides, "An inmate alien subject to a final order of removal, deportation, or exclusion will earn GCT at the annual rate of 54 days," though such award "is subject to disciplinary forfeiture or disallowance." PS 5884.03 §§ 7(e) & (f). In its summary of the changes effected by revising the previous Program Statement dealing with GCT, the BOP makes clear that the primary change put into effect in the new version of this Program Statement is "to exempt aliens subject to a final order of removal, deportation, or exclusion from the 'satisfactory progress in a literacy program' provision of the PLRA." Id. § 2.

Also relevant to the issues at hand is PS 5350.28, which covers the Literacy Program[3] and elaborates on the provisions of 28 C.F.R. § 544.70 *et seq*. This Program Statement reiterates the Literacy Program participation requirement and the exemption for "sentenced deportable aliens." PS 5350.28 §§ 1 & 8 (quoting 28 C.F.R. §§ 544.70 & 544.71). In addition, it defines the term "sentenced deportable alien" to include inmates who are either (1) "assigned a Public Safety Factor 'H' status of 'Alien'" or (2) "under a final Bureau of Immigration and Customs Enforcement ["BICE"] order of deportation, exclusion, or removal." Id. § 9(c). Furthermore, it addresses the question of how "the sentenced

---

[2]Program Statements, the BOP's internal agency guidelines, are entitled to some deference from the courts. Reno v. Koray, 515 U.S. 50, 61 (1995).

[3]Confusion arises from the slight differences between the terminology used in the statute, the regulations, and the Program Statements in reference to what amounts to the same educational program. The "GED program" mentioned in 18 U.S.C. § 3624(b), the "adult literacy program" from 28 C.F.R. § 544.70, and the "Literacy Program" referenced throughout PS 5350.28 all refer to essentially the same thing. For ease of reference, the Court will hereinafter use the term "Literacy Program."

deportable alien exemption affect[s] the good conduct time of these inmates[.]" Id. § 9(d). Specifically, it states:

> Although sentenced deportable aliens are exempt from attending the literacy program for the mandated 240 instructional hours, they are still subject to the satisfactory progress literacy provision of . . . the PLRA. To . . . be eligible for the maximum amount of GCT, deportable aliens without a verified high school diploma or GED who are sentenced under . . . the PLRA must meet the satisfactory progress provision of [§ 3624(b)(1) of the PLRA].

Id.[4]

In sum, Congress has granted the BOP considerable discretion in deciding whether and how to award GCT to prisoners. See 18 U.S.C. § 3624(b). The BOP has exercised that discretion by promulgating regulations and program statements that control how GCT is awarded. Under these rules, inmates are generally required to have earned or be making satisfactory progress toward a high school diploma or GED to be eligible for the maximum 54 days of GCT per year served. See 28 C.F.R. § 523.20; PS 5884.03. The way for inmates to satisfy this "satisfactory progress" requirement is to participate in the Literacy Program. The BOP has exempted sentenced deportable aliens from the Literacy Program. See 28 C.F.R. § 544.70 *et seq.*; PS 5350.28. This exemption does not, however, guarantee them eligibility for the full 54 days per year of GCT – it merely ensures that they will not be disciplined for failure to participate in the program. 28 C.F.R. §§ 544.71(a) & 544.75. The

---

[4]To be clear, being subject to a final order of removal, deportation, or exclusion is not the same thing as being a sentenced deportable alien under the BOP's regulatory framework. The former is a sufficient, but not a necessary, condition for the latter. In other words, according to the BOP's definition, an inmate who has been subjected to a final deportation order qualifies as a sentenced deportable alien, but it is possible to be a sentenced deportable alien without being subjected to final deportation order (*e.g.*, by being an alien who has been classified with a Public Safety Factor of "Alien" but has not been subjected to a final deportation order). See PS 5350.28 § 9(c).

9

BOP has created a separate exemption for "aliens subject to a final order of removal, deportation, or exclusion." PS 5884.03 §§ 2 & 7(e)-(f). Inmates in this category have been exempted from the Literacy Program as well as the satisfactory progress requirement, such that they accrue 54 days of GCT per year irrespective of whether they participate in the Literacy Program. See id.

### B. Petitioner Is Not Entitled to Additional GCT

#### 1. Petitioner's Claim for Additional GCT for the One-Year Period Ending in May of 2008 Is Moot

It is undisputed that following the filing of the instant § 2241 petition, Petitioner's sentence computation was updated to award him the full allotment of GCT for the year-long period ending in May of 2008. (See doc. no. 8, pp. 8, 9-10 & Ex. 3, ¶ 15.) Therefore, Petitioner's claim for additional GCT for this period should be dismissed as moot. Soliman v. United States, 296 F.3d 1237, 1242 (11th Cir. 2002) (noting that issue becomes moot "if events that occur subsequent to the filing of a lawsuit or an appeal deprive the court of the ability to give the [petitioner] meaningful relief"); Lambrix v. Singletary, 72 F.3d 1500, 1508 (11th Cir. 1996) (finding claim for habeas corpus relief becomes moot when the remedy sought has already been independently granted).

Having determined that no controversy remains as to the 12 days of GCT Petitioner has been awarded for the one-year period ending in May of 2008, the Court will turn to the question of whether Petitioner is entitled to the 24 days of GCT he seeks for the remaining time periods at issue in this case.

### 2. Petitioner Is Not Entitled to the Full Allotment of GCT for the Remaining Periods at Issue

Initially, the Court rejects Petitioner's contention that he is entitled to 54 days of GCT for each year served regardless of his failure to participate in the Literacy Program. (See doc. no. 1, pp. 8-9.) As explained above, an inmate who qualifies as a sentenced deportable alien is not required to participate in the Literacy Program.[5] PS 5350.28 Therefore, Petitioner's allegation that Ms. Smalls told him during the February 1st meeting that, as a deportable alien, "he was not required to participate in the [Literacy Program]" does not show that she misinformed him. (Doc. no. 1, p. 4.) However, this exemption from the Literacy Program requirement does not equate to entitlement to the maximum GCT award of 54 days per year served regardless of nonparticipation; rather, it merely shields sentenced deportable aliens from discipline for not participating in the Literacy Program. PS 5350.28.

An inmate subject to a final BICE order of deportation, on the other hand, is entitled to the full allotment of GCT even if he refuses to participate in the Literacy Program. PS 5884.03 §§ 7(e) & (f). However, Petitioner has neither alleged nor shown that he has ever been subject to such an order. Furthermore, Petitioner's allegation that Ms. Smalls checked the box on the PLRA form he signed indicating he was subject to a final order of deportation (see doc. no. 9, p. 2), even if true, would not entitle Petitioner to the additional GCT he seeks. It is undisputed that Petitioner signed the form, and the form's language makes clear that it sets forth the inmate's own representation as to his immigration status with regard the BOP's Literacy Program requirement. (See doc. no. 8, Ex. 3, Attach. 4.) Moreover, the

---

[5]The parties do not dispute that Petitioner qualifies as a sentenced deportable alien.

11

Court credits Ms. Smalls' affidavit testimony that, as a teacher in the prison Education Department, she does not make determinations regarding inmates' immigration status, but rather explains to inmates that they must contact the appropriate officials regarding issues such as "whether or not [they are] in fact the subject of a final deportation order." (Id., Ex. 3, ¶ 8.)

The Court likewise rejects Petitioner's assertion that he is entitled to the full allotment of GCT during the time periods in question because he was on the waiting list for the Literacy Program at Coleman. (See doc. no. 1, pp. 10-11.) The evidence produced by Respondent effectively refutes Petitioner's averment that he was placed on the waiting list for the Literacy Program at Coleman. For example, prison records consistently show that Petitioner showed no interest in the Literacy Program and refused to participate, not that he wanted to participate and was placed on a waiting list. (See doc. no. 8, Ex. 3, ¶¶ 7, 11 & Attach. 3.) Also, Ms. Smalls attests that the maximum wait for the Literacy Program would have been a few weeks (id. ¶ 9.); however, Petitioner was confined at Coleman for approximately a year and a half, and it is undisputed that he never participated in the Literacy Program at Coleman. Moreover, Petitioner has produced no evidence aside from his own self-serving averments that he was told he would be placed on the waiting list for the Literacy Program at Coleman, let alone that he was actually placed on the waiting list.

Petitioner's contention that he enrolled in the program by the time provided in his March 3, 2007 program review meeting is similarly unavailing. As Respondent observes, the documentation produced by Petitioner regarding the March 3rd meeting makes it apparent that Petitioner had refused to participate in the Literacy Program and that

participation in the program by the date indicated was merely a goal for his next program review. (See doc. no. 8, p. 9; doc. no. 1-1, p. 31.) More importantly, there is nothing in the documentation supporting Petitioner's contention that prison officials excused him from participating in the Literacy Program while guaranteeing no consequences as to his GCT award. (See doc. no. 1-1, p. 31.)

Furthermore, Petitioner may not prevail on his claim for an award of additional GCT based on his assertion that prior sentence computations reflect an award of the full allotment of GCT for the periods in question. (See doc. no. 9.) The previously discussed authorities make clear that Petitioner is not entitled to the full allotment of GCT for the periods in which he failed to participate in the Literacy Program. See supra Part II.A. Even though prior sentence computations may have incorrectly projected a release date based on a full allotment of GCT during these periods, unfortunately for Petitioner, federal courts "cannot require the BOP to use an incorrect sentence computation to determine a prisoner's projected release date, or allow an inmate to be prematurely released based upon a computation error." Kokoski v. Felts, Case No. 5:06-cv-00849, 2007 U.S. Dist. LEXIS 102318, at *15 (S.D. W. Va. June 26, 2007) (citing Hawkins v. Freeman, 195 F.3d 732 (4th Cir. 1999)), *adopted as opinion of the District Court*, 2007 U.S. Dist. LEXIS 72437 (S.D. W. Va. Sept. 27, 2007). Therefore, the fact that a prior sentence computation by officials at Coleman projected a date of release that reflected a full allotment of GCT for the periods in question does not entitle Petitioner to the relief he seeks.

In sum, Respondent has shown that Petitioner has been awarded all of the GCT to which he is entitled. As a result, Petitioner's claim for the GCT he has now been awarded

13

should be dismissed as moot, and the remainder of the petition should be denied.

### III. CONCLUSION

For the reasons stated above, the Court **REPORTS** and **RECOMMENDS** that the petition be **DISMISSED AS MOOT IN PART** and **DENIED IN PART**. As a result, the Court further **RECOMMENDS** that this civil action be **CLOSED** and that a final judgment be **ENTERED** in favor of Respondent Wells.

SO REPORTED and RECOMMENDED this 8th day of March, 2012, at Augusta, Georgia.

W. LEON BARFIELD
UNITED STATES MAGISTRATE JUDGE